Case 23-3658, Jeremy Allen v. Charles Brooks, et al. Good morning, Your Honors. Counsel. Counsel. May it please the Court. I'm Assistant Attorney General Ben Heringa, and I ask this Court to find and amend the complaint filed after a prisoner is released from custody has no effect on when that prisoner brings an action under the Prisoner Litigation Reform Act. This interpretation is consistent with the plain language of the PLRA, the PLRA's purpose, and the guidance from the Supreme Court. But even if you disagree with the plurality of circuits and the guidance from Justice Thomas, and instead decide to follow the guidance from the Ninth Circuit, the result must still be the same. This Court must find that Allen's complaint, which no court can find was a supplemental pleading, has no effect on when he brought this action. Counsel, why doesn't Folk v. Cherrier control here and tell us that we have to determine whether the amended complaint relates back to the original complaint? In other words, we're not writing out a blank slate here. We've got two Eighth Circuit opinions that seem to provide a lot of guidance, if not control. Your Honor, I think the argument that's — I think what Apelli is trying to argue is that the complaint — is that the PLRA can adopt Rule 15 to relate back, but — Wait a minute. I want to flesh out what that is. You're saying a statute that never mentions a rule can operate in such a fashion as to amend a rule? Say that one more time. Well, I think — I thought I was just telling you what you told me. It sounded to me like you were saying the PLRA, which is an act of Congress, can amend a rule, Rule 15, and the way it's been interpreted, and — without ever mentioning the rule. It's some kind of an inference, right? Whereas, you know, Folk v. Cherrier seems to stand for the proposition that the original filing is a legal nullity once the amendment takes place under Rule 15. So I think there are two issues with Folk v. Cherrier, and reading into Apelli's reading of Folk v. Cherrier. First, Folk v. Cherrier was a discrete issue in which that was a harm that was alleged to occur before PLRA was passed. And Folk v. Cherrier was only the analysis of whether the PLRA applied at all. Right. And ultimately, that Court did not determine whether or not the PLRA applied. They determined that that issue was waived. And so they didn't determine one way or another. There certainly was analysis. But I don't know that that is binding on this Court in terms of whether or not the — you know, the Rule 15 binds on the PLRA and whether or not it relates back. What about the Supreme Court's opinion in Bach? Doesn't that tell us not to depart from the rules of civil procedure to — when we're dealing with exhaustion under the statute? So Jones v. Bach was a Rule 8a case. It wasn't a Rule 15 case. In fact, it doesn't even mention Rule 15. Now, I think that it does suggest that you shouldn't depart from the rules unless there's a reason to. But I don't think that you need to depart from the rules to find that an amended complaint has no effect on when a prisoner brings an action under the PLRA. Because as the Harris Court — the en banc 11th Circuit says, in Harris v. Garner, if there were a conflict between the PLRA and Rule 15, the subsequently enacted act of Congress would — would supersede the — the rule. But there is no — ultimately, the Harris Court provides extensive analysis on why there is no conflict. And that Rule 15 needs to operate within the parameters of the PLRA. And I think that the Harris Court does a good job of explaining exactly why those two are not in conflict. But ultimately, even if there were to be a disagreement about — and even if this Court were to find that — that Mr. Allen's complaint does not relate back, that his amended complaint that he filed after he were released from prison does not relate back, that doesn't reach the conclusion that Appelli wants us to reach. What he's asking us to do is not to find that — that he — that it doesn't relate back. What he's asking us to actually do, without saying it, is that his complaint relates forward. Rule 15 doesn't do that. Rule 15c doesn't do that. There's nothing in Rule 15 that — c that says that it does that. That is denying the consequent. That's a — a logical fallacy. And that's not how Rule 15c operates. There's no case law suggesting that it does. And so ultimately, even if we were to agree with everything that Appelli says, that's not how Rule 15 works. And again, this is — this is assuming that we agree with Appelli's assessment of Rule 15c, which, again — and that it is in conflict with PLRA, and it's not. And — and I think the Harris Court does a good job of assessing why the two are not in conflict. But even if it were, because the PLRA is subsequently enacted, and — and the rules have to operate within the statutes. And — and especially if you look at the — the purpose of the — if you look at the plain language of the PLRA. And so the — the plain language, and I'm sure that this has been read, you know, it's been quoted several times. No action has been brought — shall be brought under this section of — under Section 1983 of this title by a prisoner until such administrative remedies. Well, it says by a prisoner confined in jail — Yes. — prison or other correctional facility. And so the question is on commencement, right? Yes, Your Honor. And so your argument essentially is it was commenced, and whatever the amended — amended complaint does, while it may render the original complaint a nullity and that action is defined by what's in the amended complaint, the action was actually commenced at the time of the original filing. And, Your Honor, I don't mean to be pedantic. I don't like — I — I would — I would have reservation about saying that it renders it a nullity. There's not a single decision that says that it's — Well, I — I get that. What I'm saying is it's ineffective, right? Yes, Your Honor. I mean, so if you raise a claim or defense in the original complaint, it's gone unless you reassert it in the amended complaint. That's what I meant to say. Even — yes, Your Honor. Even for the purpose of statute of limitations, the — the 10th Circuit's opinion on this case, they — they do a good job of analyzing how even in statute of limitations cases, which — and I am — I'm not pretending that 15C isn't applied in some cases to the PLRA and outside of statute of limitation cases. It is. But the initial complaint still does have some effect. And ultimately, if you look at the plain language of the PLRA, it says no action shall be brought. And when this action was brought, Mr. Allen had not exhausted his — his administrative remedies. And — and no amendment and — and no procedural remedy or — or no rule of civil procedure can — can change that historical fact. That was the analysis of the Harris Court. So ultimately, looking at the — the plain language of the PLRA, even within the procedurally defaulted, within the purposes of the exhaustion requirement, and therefore he is in derelict, and to give the — the words that Congress meant, and again, to look at the plain language, and looking at — at the Cox opinion and also the Harris Court, Congress chose the words, and we will heed them. And I ask this Court to do the same. No action shall be brought. And the Supreme Court — a unanimous Supreme Court, the Chief Justice's opinion referred to that as boilerplate. They referred to that as boilerplate, but we look at what Justice Thomas said in — in the denial of — writ of certiorari, which I appreciate that's non-precedential, but he informs — he sat on that — on that — on Jones v. Bach. He was in the majority of — in the unanimous opinion, and he informed that that language did not apply to the application of the exhaustion requirement. He was very explicit. Now, you could argue that — that he was neutral in — in his language, but ultimately, I think it's fairly clear that — that he — It seems to me the better — the better language in Bach for you is earlier in the opinion, where the Chief writes, there is no question that exhaustion is mandatory and that unexhausted claims cannot be brought in court. And two pages later, that is not to say that a failure to exhaust cannot be a basis for dismissal, for failure to state a claim. I agree, Your Honor. This notion that — that action and claim somehow have very, very different meanings and — and we have to seize on the difference is not reflected in Bach. I agree, and that's not — People — people can make up that it is, but it's not. I agree. And that's now a well-established case law that, for the purposes of PLRA and beyond the PLRA, that claim and action are — are not distinguishable, that the two are — are treated the same. I appreciate your time. I reserve the remainder of my time for rebuttal. Thank you. Thank you. Is it Moccio? Moccio. May it please the Court, my name is Vincent Moccio. I'm here with my co-counsel Mahesha Subba-Rabin, and we represent the appellee, Mr. Jeffrey Allen. The issue before this Court is pretty simple. It's whether or not the PLRA sets the date for exhaustion as of the first complaint, no matter what happens thereafter, or whether the Federal Rules of Civil Procedure apply and we use the usual process to analyze amended complaints. The State, although paying some lip service today to Bach, ignores Bach, and it cites cases — I just told you what should — what should not be ignored in Bach. I — I — So that you would respond. Yes. And — and I will get there. I'll — I'll get there right now. I'm a little confused by the Court's question with regard to how claim and action relate to this specific fact situation. The situation here is that we sued various defendants, but only two defendants from the State, the commissioner and the medical director of the prison. The point to me is that the time he filed the grievance, okay, he — he had — he litigation would call John Doe defendants, but in fact these two would have been once identified clearly within the initial complaint. So this is not — this is not a changing landscape type situation. It's the act — the — the alleged wrongful act was the same. The actors were the same. It was who were they that changed. And that should be — who — who is responsible for that in terms of the PLRA? And it seems to me it's — it's the — it's the inmate. Okay. Well, if we accept that, then what you're basically saying is that the PLRA does in fact suspend the rules of civil procedure, which, of course, is what we are not — No. Well — Well, I don't agree with that. Well, yes. Well — I know that — I know that's argued, and my colleagues may agree with that. I just — I don't think — I don't think it's a Rule 15 case, but I understand the point, and it's — Well, let me just — let me — since this is obviously the most important item on your mind, let me — let me just explain what I mean by — by that. The case law is clear, as cited by the district court and in our brief with regard to the defendants who are then later named. The complaint does not relate back. Doesn't Hagelin v. Atkins address that? I'm not sure, Your Honor. Oh, it's an Eighth Circuit case that I believe stands for the proposition that the failure to — that the use of placeholders is not a mistake under Rule 15c. Right. And therefore, it does not relate back. Exactly. That's — that's what I'm saying. I'm sorry I didn't remember the case, because to be honest, Your Honor, I didn't know that the State was even challenging the Rule 16 analysis. I don't think it does in its briefs. I think the question here was whether or not Rule 15 applies or not. Once Rule 15 applies, then the case law, as ruled on by the district court, I think has to be accepted by this Court. But if we get beyond that for a moment, the case law shows, as you've pointed out and as we point out in our brief, that where there's John Doe defendants and then they are later named, the complaint does not relate back. Therefore, here, there is no nexus between that amended complaint and that initial complaint, and the date of the initial complaint does not apply. There is — to get back to Judge Loken's question, I don't see how you divorce the question of whether or not the rules apply to saying, well, the amended complaint has some effect — has no effect here. You have to — you have to look at the rules. Otherwise, we're ruling that the PLRA suspends them. And obviously, Judge Loken disagrees that you can not look at the rules and still come to the conclusion here that — that the State — that the State wants. I don't completely understand that. Gershengorn If action means claim, then it's equivalent to claim. It's not ignoring Rule 15. It's a situation where the PLRA is explicit and, therefore, drives the Rule 15 train. Not everything relates back. Some things do. Some things don't. Fisher Right. And in this case, the — as I was explaining with regard to the factual situation,  So the State was not in the case for four months. We then refiled against the State. So there is a clear — there's a clear break there. And I think that Bach is clear, and we've kind of had no discussion here of Bach whatsoever, but I really want to point the Court to Bach, that Bach is clear that there has to be an explicit or an implicit intent of Congress to do away with the  And if the Court is going to rule that you don't have to do away with the rules of civil procedure here to still find, then — then I don't know what the effect of Bach on this case is. And — and I apologize if I'm stumbling over my words, but this is actually a line of questioning that I — Kennedy I think that's — that's the distinction, whether the Supreme Court in recognizing that the statute seemed pretty clearly to include claims when it used the word no cause of action, whether that was affecting the application of the usual practice with regard to Rule 15. Fisher Right. And Bach has found that it did not. Kennedy Well, that — that wasn't an issue in Bach. Fisher Well, no, but in Bach it found that the — that that language did not affect the application of the rules with regard to whether or not it was a rule of pleading. All right? Kennedy It wasn't discussing this situation. Fisher No, it wasn't discussing this situation at all. I agree with that. But it still set out the framework for looking at whether or not the rules apply. And in order to see if the rules apply, you have to find an explicit or an implicit reason. The statute never mentions Rule 15. It never mentions amendments. It gives no indication whatsoever that those rules should be suspended with regard to this situation, just as it didn't give any indication that they should be suspended with regard to the situation at — at bar in Bach. Kennedy I don't suppose that the — that the Congress was looking at all 80 — 80 how many Federal rules there are when they — when they drafted the statute. Fisher But we do know, and it's cited in our brief, that with regard to the Private Litigation Securities Act, they did, in fact, explicitly suspend Rule 23. Kennedy Oh, sure, they did. Yeah, that was focused on — that was focused. This was not focused on Rule 15. Fisher It was not rule — focused on Rule 15, but there has to be some indication. And if you're saying that just putting no action should be brought, well, then you get into, first of all, explicitly the — the Bach decision found that that language didn't implicate reading out the rules of civil procedure in the — in the situation that was in front of it. And implicitly, they talk about the entire, you know, Bach boilerplate — boilerplate nature of the language. And the boilerplate nature of the language does not lend itself to an explicit or implicit congressional intent. Plus, statutes of limitations all the time use the rules of civil procedure and do the relation back analysis. So as boilerplate language, it brings with it what — what Congress always intends that boilerplate language to mean, which is you look at it under the usual practices. The other problem, Your Honors, is if the Court gets into looking at every individual situation under the PLRA, rather than using the extensive body of law that is already existing for the civil — for the — the rules of civil procedure, you're going to have case-by-case analysis of whether or not the PLRA means one thing or the other with regard to the fact situations that come before it. For instance, here you're trying to distinguish this fact situation from the one that came before it. I have dealt with attempts, inmate attempts, sometimes after acquired knowledge, sometimes being clever, to constantly expand, alter, amend, and reinvent their PLR — their claims to try to get around PLRA. And so this is an actual floodgate. Well, all I'm suggesting, Your Honor, is that those be analyzed under the rules of civil procedure, and that doesn't mean that every one of those is going to be successful or unsuccessful. There's also the admonition in Bach, and I believe it's on page 323, where they're talking about policy, where they say you've got to have more than policy, or it's just not really statutory interpretation. You can't let policy drive the bus. And, in fact, what they say on that page, 323, is if you get into the business of looking at the policy, you may wind up doing exactly the opposite thing that you're intending. In other words, if you're going to start dismissing claim after claim after claim, you're going to have refiling after refiling after refiling. And so you're not really solving the problem. You're just creating a bigger problem. So policy becomes very difficult to deal with in these issues. And Bach, I believe, is very adamant that policy should not be the reason you find congressional intent. Kennedy. That's pretty good gospel for interpreting statutes. I'm not surprised that the Chief Justice said that. I agree with it. All right. So if we start from that point of view, I hate to belabor the point, but I really want to make sure I answer the Court's question. And I'm still a little bit confused as to why the distinction, or nondistinction as you look at it, between action and claim affects this particular case. Because of the way it was decided by the district court. I mean, it's the analysis. It's the party's analysis in the courts. You know, I wouldn't have focused on that as an original proposition. I don't think. I think I don't. I just don't. Rule 15 wasn't in anybody's radar when this statute was drafted, or in most cases where it's applied. Well, I think you have to look at all statutes as being drafted in the context of the rules in the common law. I don't think you can say, oh, the statute didn't particularly. Nobody in Congress was thinking about this particular rule. The rules exist. And Congress is promulgating statutes in the background of the rules that exist and that it knows exist and the common law that exists. And to some extent, they may or may not know it exists. And so you have to look at it within that framework. You can't just say they weren't looking particularly at Rule 15. Therefore, somehow, magically, the PLRA suspends Rule 15. It doesn't suspend Rule 15 because under Bach, it neither implicitly or explicitly does that. And I really don't have any other answer for you other than that. That's the issue. That is the issue. Can I answer any more questions? Thank you. Rebuttal? Thank you, Your Honor. So a few points. It should be noted that while a few State defendants were dismissed from this case for a period of time, the Jane and John Does, who were named as DOC defendants, remained. So they — and they were never dismissed from this case. It should also be noticed or noted that in Mae v. Segovia, that's a Tenth Circuit case, that adding new defendants does not create a new cause of action for exhaustion requirements under the PLRA. And that case didn't rely on Tenth Circuit precedent. It relied on Jones v. Bach. So just because they added — and in this case, they didn't add new defendants. They named Jane and John Does. That doesn't create a new precedent — or, excuse me, a new cause — a new claim or action for exhaustion requirements pursuant to the Tenth Circuit. I can't help but notice that we don't — still don't have an answer as to why the lack of the application of the relation-backed doctrine saves this cause of action. The inapplicability of Rule 15c and how that somehow allows Allen to avoid his obligation under the PLRA. And it's interesting that if you look at the opposite authorities cited by Apelli, if you look at Garrett v. Wexford Health, if you look at the Fong decision — so Garrett v. Wexford Health, that decision, it cites Rule 15c. It relies heavily on 15d and a. It goes into great length discussing those two parts of Rule 15. It cites 15c, I believe it's just once. And it finds that that claim is saved because 15c does apply. And it's the same thing with the Fong decision in the Ninth Circuit. It finds that because 15d in that case does apply, that the prisoner is excused from failing to exhaust their administrative remedies. And we still don't have an explanation as to why the failure to exhaust your administrative remedies somehow allows you to avoid your obligation under the PLRA. And again, if you look at the plain language of the PLRA, it's when it is brought. And the Supreme Court has held over and over, and this is cited by the Harris case, it's also cited by the Cox case, that brought means commenced. It doesn't mean continued. And no historical, no amendment and no application of the rule can change that. And I think that Appelli's counsel tries to oversimplify this case. He tries to create a false psychotomy that if we apply the rules, then we have to reach his decision. But again, the rules aren't in conflict here. The rules in the PLRA aren't in conflict. We have to read the rules as they apply to the PLRA. Now, if we were to read the two in conflict, then again, we can look at what Justice Thomas says. And he says that the PLRA trumps Rule 15. He explicitly says that. Again, I understand that's not precedential opinion, but he gives us a pretty clear idea of how he would feel about that. And that is also held by the Eleventh and Sixth Circuits. And that's also been held. Now, this was the Supreme Court. It was a different section of the PLRA. It was the three-strike, the three-strike portion. It was Rule 41, I believe it was 41B, in the Lomax opinion. That was a 2020 opinion. This isn't new territory. This is something that the Supreme Court has already looked at. It's also important to — and I understand that policy is not the best reason to make decisions, especially for matters of first impression, but it would be — But not only is it not the best reason, we've been told by the Supreme Court not to look to policies. I understand. So you're asking us to ignore the Supreme Court. No, Your Honor. But I think that policy can at least inform why the plain text makes sense. So the policy, you know, the idea of decreasing the number and increasing the efficacy of the lawsuits, but also giving DOC officials the opportunity to solve the issues. And if I could just finish this sentence, I know I'm out of time. Well, thank you for the opportunity. I ask that you reverse the district court's denial of summary judgment with instruction to dismiss with prejudice. Thank you. Thank you, counsel. Case has been well briefed. An argument has been right on point and helpful. And we'll take the case under advisement.